## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MARYLAND

EDWARD J. MYERS
107 New Jersey Avenue
Glen Burnie, MD 21061
Anne Arundel County

and

MARK E. RICHARDSON
1601 Belt Street
Baltimore, MD 21230
Baltimore City,

    Plaintiffs

    V.

MAYOR AND CITY COUNCIL OF
    BALTIMORE
City Hall
100 N. Holliday Street
Baltimore, MD 21202

    Serve on:
    George A. Nilson, Esquire
    City Solicitor
    Baltimore City Law Department
    101 City Hall
    100 N. Holliday St.
    Baltimore, MD 21202

Civil Action No.:  13-1924

## <u>Complaint</u>

Plaintiffs, Edward J. Myers, and Mark E. Richardson, by their attorney, G. Macy Nelson, Bar Number: 02993, file this Complaint against the Mayor and City Council of Baltimore ("Defendant"), and allege as follows:

**Introduction**

1.      This Complaint is a citizen's suit, brought under § 505 of the Clean Water Act (the "Act"), 33 U.S.C. § 1365, for the Defendant's violations of § 402 of the Act.

2.      Defendant owns and leases properties in Baltimore City, Maryland. These properties, due to past industrial use of the land, are contaminated by pollutants, including heavy metals, semi-volatile organic compounds, petroleum-related compounds, and volatile organic compounds.  These pollutants are being discharged, on a daily basis, into the groundwater beneath the Defendant's properties and into the waters of the United States that neighbor the property to the southeast, in violation of the Clean Water Act.

**Jurisdiction**

3.      Plaintiffs incorporate by reference all factual allegations in this Complaint.

4.      This court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331, as this claim arises under the laws of the United States, specifically 33 U.S.C. § 1365.

5.      Venue is appropriate in this District under 28 U.S.C. §1391(b)(2) because the occurrences giving rise to this action occurred in Maryland.

6.      Plaintiffs have standing under § 505 of the Act, which permits a citizen to sue any person, including government parties, that has violated the Act. 33 U.S.C. § 1365(a).

7.      On April 19, 2013, Plaintiffs provided written notice to the Defendants as required by the Act. 33 U.S.C. § 1365(b).  The written notice (the "Notice Letter") included notice of the Defendant's violations and the Plaintiffs' intent to sue for those violations.  The Notice Letter was provided to George A. Nilson, City Solicitor, Baltimore City Law Department; Steven R. Johnson, Assistant Attorney General, Maryland; Robert Summers, Secretary, Maryland Department of Environment ("MDE"); Stephen Field, United States Environmental Protection Agency ("EPA"); and Stephanie Rawlings-Blake, Mayor of Baltimore City (*see* Notice Letter Attached Hereto as Exhibit A).

8.      Since providing the Defendant and all other statutorily defined parties with the Notice Letter, the requisite 60-day period has expired and this action may be commenced under 33 U.S.C. § 1365(b)(1)(A).

9.      During this 60-day period, no State or Federal party, including the MDE and the EPA, has commenced or diligently prosecuted a court action to redress the violations alleged in this complaint.  33 U.S.C. § 1365(b)(1)(B).

**Parties**

10.     Plaintiffs incorporate by reference all factual allegations in this Complaint.

11.     Plaintiff Edward J. Myers resides at 107 New Jersey Avenue, Glen Burnie, Maryland 21061. He is a resident of Anne Arundel County, Maryland.

12.     Plaintiff Mark E. Richardson resides at 1601 Belt Street, Baltimore, Maryland 21230. He is a resident of Baltimore City, Maryland.

13.     The Plaintiffs live near the Middle Branch of the Patapsco River (the "River").  They regularly use and recreate on and around the River and desire to do so in the future.  The quality of the River and the water system of which it is a part directly affects the agricultural, health, recreational, aesthetic, property, and/or environmental interests of the Plaintiffs.

14.     Defendant, Mayor and City Council of Baltimore, owns property located at 1501, 1525, and 1551 Russell Street ("Gateway South Phase I Properties"), and 1501, 1601, 1629, 1633, and 1645 Warner Street, 2119 Haines Street, 2104 Worcester Street, and 2102 Oler Street ("Warner Street Properties"), and other adjacent properties (collectively, the properties are hereafter, the "Site"). The Site is located adjacent to the Middle Branch of the Patapsco River.

## Legal Background

15.     Plaintiffs incorporate by reference all factual allegations in this Complaint.

16.     The Clean Water Act was passed in 1972 in an effort to restore and maintain the chemical, physical, and biological integrity of the nation's waters. Section 1342(a) of the Act requires a person to hold a National Pollutant Discharge Elimination System discharge permit ("NPDES permit") before discharging any pollutant into the navigable waters.

17.     A violation of the Act occurs when the Defendant does not have an NPDES permit and the following elements are met: (1) a *pollutant* must be (2) *added* (3) to *navigable waters* (4) *from* (5) a *point source*.

18.     The term "pollutant" explicitly includes "chemical wastes" and "industrial… waste." 33 U.S.C. § 1362(c).

19.     The term "added" means the introduction of a pollutant to water from the outside world.

20.     "Navigable waters" means the waters of the United States. 33 U.S.C. § 1362(7).

21.     A "point source" is any "discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel,

conduit… from which pollutants are or may be discharged." 33 U.S.C. §

1362(16).

22.     Pollution that originates "from" a nonpoint source becomes point

source pollution when collected and conveyed toward the waters of the United

States.

23.     The Act permits the court to award injunctive relief.  33 U.S.C. §

1319(b).  The Act also provides for civil penalties of up to $37,500.00 per

violation beginning January 13, 2009, and $32,500.00 per violation prior to that

date.  Each day that a violation of the Act continues constitutes a separate

violation.  33 U.S.C. § 1319(a)(2); 40 C.F.R. § 19.4.  The Act also authorizes the

court to award the costs of litigation including reasonable attorney's fees and

expert witness fees.  33 U.S.C. § 1365(d).

## Factual Background

24.     Plaintiffs incorporate by reference all factual allegations in this

Complaint.

25.     Defendant owns the Site, consisting of the Warner Street and

Gateway South Phase I properties.  These properties are located in the vicinity of

the Middle Branch of the Patapsco River.  Baltimore City also owns waterfront

property which boarders the Warner Street properties to the south and is the only

land between the Warner Street properties and the Middle Branch of the Patapsco River.

26.     The Site is located in a densely developed area in the Carroll-Camden Industrial Area of Baltimore City.  For years, the Site had been used for a variety of industrial purposes.  The Gateway South Phase I property is the former location of Maryland Chemical, which operated on the lots from 1904 to approximately 2009.  Maryland Chemical used the location for the storage and sale of custom blended chemicals.  Prior to being occupied by Maryland Chemical, the lot was occupied by American Cyanamid, an industrial manufacturer of pesticides and agricultural chemicals.  The Gateway South Phase I lot is located to the North and Northwest of the Warner Street Properties.  The Warner Street Properties had also been used for a variety of industrial purposes.

27.     The industrial use of these properties contributed to an accumulation of pollutants in the soil of the properties.  These pollutants include heavy metals, semi-volatile organic compounds (SVOC's), petroleum compounds, and volatile organic compounds (VOC's).  Specifically, the following pollutants, among others, have been detected in the soil beneath the Defendant's properties in concentrations that exceed the MDE Cleanup Standards for Non-Residential Soil: Arsenic, Antimony, Cadmium, Chromium, Iron, Lead, Manganese, Mercury, Thallium, Vanadium, Benzo[a]anthracene, Benzo[a]pyrene,

Benzo[b]fluoranthene, Dibenz[a,h]anthracene, Indeno[1,2,3-cd]pyrene, Petroleum

Hydrocarbons, Carbon Tetrachloride and Trichloroethene (TCE).

28.    These pollutants are located in the soil at depths ranging from the

surface to more than twelve feet below the surface.

29.    The soil at the Site is highly permeable and groundwater flows

through the soil at the Site in a southeasterly direction toward and into the River.

The groundwater reaches heights of between five and nine feet below the surface

and averages a depth of six feet below surface, which is higher than the depth of

the contaminated soil.

30.    As groundwater flows through the contaminated soil, pollutants from

the soil are added to the groundwater, which has been demonstrated by tests

conducted by MDE and other private organizations.

31.    There are pipes and other utilities located beneath the Site.  In

particular, there is a 42-inch storm drainage pipe located beneath Bayard Street.

Some pipes empty directly into the River.

32.    The groundwater that travels through the Defendant's properties

collects along the exterior of these utilities and pipes.  Water then travels along the

exterior of the pipes toward the River, following a preferred pathway for the

groundwater to reach the River.

33.     Additionally, all pipes more likely than not contains gaps, cracks, and holes that have developed over time.  Contaminated groundwater collects inside the pipes as a result of these gaps, cracks, and holes and then travels directly into the River.

## Legal Allegations

34.     Plaintiffs incorporate by reference all factual allegations in this Complaint.

35.     The VOCs, SVOCs, petroleum-related compounds, and heavy metals that are located in the soil beneath the Defendant's properties are pollutants under the Clean Water Act.

36.     The River is a navigable water of the United States under the Act.

37.     The addition of pollutants to the River constitutes a discharge within the meaning of the Act because there is an addition of pollutants from the outside world.

38.     The addition of pollutants occurs "from" the Defendant's properties because the chemical compounds in the soil beneath the Site is collected in the passing groundwater before being conveyed to the River.

39.     The discharge of pollutants from the Defendant's Site occurs at three separate point sources: First, any pipes are a point source; Second, the preferred

pathway created by the exterior of the pipes is a point source; Third, the Site is a point source.

40. Groundwater that has become contaminated by the contaminated soil enters drainage pipes in the Site through gaps, cracks and holes. A pipe is a point source under the Act, even when the pipe was not intended to be used as a point source for pollution or the pipe was not intended to contain holes and other defects. Because the contaminated groundwater collects within those pipes and is conveyed directly into the River, the pipe constitutes a point source.

41. Additionally or alternatively, groundwater collects around the exterior of the drainage pipes located on the property and is conveyed along the exterior of the pipes and toward the river. Pollutants are added to this groundwater before and during the process by which the groundwater collects along the exterior of the pipes and is conveyed toward the river. Thus, any potentially non-point source pollution occurring on the Defendant's properties is converted to point source pollution by the collection and conveyance of the pollutants by the exterior of the pipes, which are a point source under the Act.

42. Additionally, or alternatively, the Defendant's properties in their entirety constitute a point source within the meaning of the Act. The properties are discernible, confined, and discrete in that discharges of pollutants into the groundwater beneath the properties are traceable to the Site.

43.     As a result, the Defendant is discharging a pollutant into the waters of the United States.

44.     The Defendant does not have an NPDES permit to discharge the particular pollutants located in the contaminated soil.

45.     Because the Defendant is discharging a pollutant into the waters of the United States without an NPDES permit, the Defendant has violated the Clean Water Act.

## Relief Requested

Plaintiffs incorporate by reference all factual allegations in this Complaint.

WHEREFORE, Plaintiffs respectfully request this court grant the following relief:

A.      Enter judgment in favor of the Plaintiffs and against the Defendant for violations of the Clean Water Act.

B.      Issue a preliminary injunction, and thereafter a permanent injunction, enjoining Defendant from continuing to violate the Clean Water Act.

C.      Order the Defendant to pay civil penalties in the amount of ten cents ($ 0.10) for each day the Defendant violated the Act.

D.      Award one dollar ($1.00) in costs to the Plaintiffs as authorized under 33 U.S.C. 1365(d).

E.      Grant any such other and further relief as this court may deem appropriate.

Respectfully submitted,


_____/s/_____

G. Macy Nelson
401 Washington Ave.
Suite 803
Towson, Maryland 21204
(410) 296-8166 – Telephone
(410) 825-0670 – Facsimile
gmacynelson@gmacynelson.com
Bar No.: 02993